MAKAR, J.
E SIS/Ace American Insurance Company and Delta Air Lines, Inc., together the *1112 Employer/Carrier (E/C) in this workers’ compensation appeal, challenge' an award by the Judge of Compensation Claims (JCC) to Deborah Kuhn (Ms. Kuhn) of a $2000 advance under section 440.20(12), Florida Statutes. Because the interest asserted by Ms. Kuhn does not entitle her to an advance, we reverse.
BACKGROUND
Ms. Kuhn has been employed with Delta for twenty-five years with some occasional jobs acting in commercials/television shows.[1] While working as a flight attendant, Ms. Kuhn suffered an injury to her shoulder on October 26, 2006 when she picked up and replaced an accordion-type door in the cabin that had been broken by a passenger. The E/C accepted compens-ability and provided benefits. Thereafter, on April 4, 2007, Ms. Kuhn reached maximum medical improvement with a five percent permanent impairment rating. Since the accident, she has continued to work as a flight attendant with Delta and has not suffered any diminishment in pay in that time.
Over four years later, on July 22, 2011, Ms. Kuhn filed a new petition for benefits, the sole purpose of which was to obtain payment of a $2000 advance under the authority of section 440.20(12), Florida Statutes. She filed no independent petition for medical benefits and no other petition for benefits is or was pending. Ms. Kuhn asserted she met the statutory criteria for an advance because (a) she has a permanent impairment and (b) the advance was in her interest.
Her only justification for her request is that, although she has saved some of her earnings, she would like an advance to augment those savings to provide a greater financial “cushion” should unexpected bills come up. She acknowledged that she was current on all her financial obligations and had no imminent need for the money. In explaining her request, she testified that “$2,000 would be great for cushion, being single, just to have extra money in my account for any unexpected things that come up, I think, or anything.” She admitted that receipt of monies as an advance would always be in her interest, stating that “I don’t think anybody would say no” to getting extra money. Finally, Ms. Kuhn testified she has no pending claims for any type of temporary or permanent benefits other than the requested advance.
Her attorney argued that this Court’s decision in Lopez v. Allied Aerofoam/Specialty Risk Services, 48 So.3d 888 (Fla. 1st DCA 2010), makes an award of an advance “pretty much automatic” where the only statutory consideration is the claimant’s interest. Based on Ms. Kuhn’s testimony and her counsel’s argument, the JCC found that the advance payment was in her best interests and expressly considered no other factors. He awarded the $2000 advance, relying on Lopez. This appeal ensued.
ANALYSIS
JCCs have discretion to award an advance payment of compensation to a workers’ compensation claimant under specified statutory conditions. The statutory structure for advances creates a breakpoint at $2000-awards up to that amount follow one set of statutory guidelines in subsections (c)(2),[2] while awards beyond that amount *1113 follow the statutory guidelines in subsection (d), both of which state as follows:
(c) In the event the claimant has not returned to the same or equivalent employment with no substantial reduction in wages or has suffered a substantial loss of earning capacity or a physical impairment, actual or apparent: ...
2. An advance payment of compensation not in excess of $2,000 may be ordered by any judge of compensation claims ... after giving due consideration to the interests of the person entitled thereto....
(d) When an application for an advance payment in excess of $2,000 is opposed by the employer or carrier, it shall be heard by a judge of compensation claims.... If the judge of compensation claims finds that such advance payment is for the best interests of the person entitled to compensation, will not materially prejudice the rights of the employer and carrier, and is reasonable under the circumstances of the case, she or he may order the same paid.
§ 440.20(12), Fla. Stat. (2012). Though only subsection (c)(2) is at issue in this case, subsection (d) will become relevant in our analysis below.
For requests of advances up to $2000 under subsection (c)(2), like the one at issue in this appeal, a JCC must perform a two-step inquiry. First, the JCC must determine whether the claimant falls into one of the three specified statutory categories: (1) claimants who have not “returned to the same or equivalent employment with no substantial reduction in wages”; (2) claimants who have “suffered a substantial loss of earning capacity”; or (3) claimants who have suffered a “physical impairment. § 440.20(12)(c)(2), Fla. Stat.; Lopez, 48 So.Sd at 888-89. Ms. Kuhn falls within the last category due to her five percent permanent impairment rating, and is thereby eligible for an advance. Second, a JCC must determine that the claimant (a) is a proper claimant and (b) has provided adequate justification for her request. We address only this latter issue.[3]
We first note that claimants eligible for advances are not automatically entitled to them. Nothing in section 440.20(12)(c)(2) suggests that requests for advances are entitlements that JCCs are required to approve perfunctorily. Instead, the operative language in subsection (c)(2) is that an advance “may be ordered” upon “due consideration of the interests of the claimant.” § 440.20(12)(c)(2), Fla. Stat. (emphasis added). The legislature’s use of “may” — rather than “shall” — can only be interpreted as investing JCCs with discretion to act, Worthy v. Jimmie Crowder Excavating, 100 So.3d 727, at 728 (Fla. 1st DCA 2012); this grant of discretionary *1114 power, however, necessarily carries with it limitations in its exercise consistent with the statutory framework.
Here, in contrast to subsection (d), which requires consideration of three factors,[4] subsection (c)(2)’s only requirement is that a JCC exercise her discretion “after giving due consideration to the interests of the person entitled[5] thereto” under the statute. We view the deferential phrase “due consideration” as granting broad discretion to JCCs to award advances up to $2000 provided a legitimate “interest” of the claimant is demonstrated. The question in this case is whether Ms. Kuhn’s claimed interest in obtaining $2000 as a “cushion” justifies the award.
Ms. Kuhn argues that we should not disturb the JCC’s conclusion that a $2000 advance as a financial “cushion” was in her best interest. Indeed, we review an award of an advance under section 440.20, Florida Statutes, under the abuse of discretion standard, Workers of Fla. v. Williams, 743 So.2d 609, 609 (Fla. 1st DCA 1999), and will not overturn factual findings unless they lack competent substantial evidence. Pierre v. R & S Assembly, Inc., 31 So.3d 901, 902 (Fla. 1st DCA 2010). But the legal question of what “interest” under section 440.20(12)(c)(2) is sufficient to justify an advance award is one we address de novo. Murray v. Manner Health, 994 So.2d 1051, 1056-57 (Fla.2008) (interpretation of statute’s language is de novo).
At the outset, Ms. Kuhn relies heavily on this Court’s decision in Lopez, which addressed whether advances of $2000 or less are awardable in cases where com-pensability is contested. Id. at 888. We determined that the statute’s plain language permitted an award of an advance without a showing of ultimate compensability. Id. at 889. We did not, however, consider possible limitations on the “interests of the person” eligible for the advance in Lopez, which is the issue presented here. As such, we need not consider the E/C’s plea that we clarify, limit or recede from Lopez.
We conclude that the provision of a financial “cushion” to a claimant is not, by itself, a justifiable basis for the award of an advance under section 440.20(12)(c)(2). To hold otherwise would result in automatic $2000 advances from E/Cs to claimants despite no connection to a pending claim for medical or related care or even a demonstrated need for the funds. Ms. Kuhn argues the requested advance is in her interest and therefore complies with the statute. In one sense, she is correct that the provision of an interest-free advance of $2000 as a financial “cushion” is in a person’s interest; as she put it in her deposition, who “would say no” to extra money for a rainy day?
We are dealing, however, with a statutory framework in Chapter 440 whose principal purpose is to address medical and related financial needs arising from workplace injuries. In context, the type of interest that is furthered by an advance under section 440.20(12)(c)(2) must at least *1115 have some plausible nexus to this purpose. A request for a $2000 advance, simply as an undifferentiated financial cushion with no relationship to the provision of medical or related care, does not have such a connection. Indeed, absent this nexus, awarding a $2000 advance could, in the extreme, become merely an automatic judicial act whenever such an advance is requested; we see no basis in the statutory framework for this result.
In reaching our conclusion, we note that our holding is consistent with this Court’s interpretation of nearly identical language in Court of Flags v. Outland, 382 So.2d 443 (Fla. 1st DCA 1980) and its progeny.[6] In Court of Flags, we considered an earlier version of what is now subsection (d) of the advance statute. We held that, despite the broad discretion granted to JCCs under the statute, advances are appropriate only where the interests of the claimants bore some relationship to their underlying workers’ compensation claims. Id. at 444. Notably, the claimant in Court of Flags sought an advance “to purchase savings certificates” with a higher interest rate “so that his spouse would have the money if he were to die before the employer/carrier had fully discharged its worker’s compensation obligations.” Id. This Court held that “worker’s compensation benefits are not intended as life insurance” and that using advances as financial vehicles for “estate planning or money market considerations” is impermissible. Id. It concluded that “such factors are in our opinion insufficient to permit an order for as 440.20(10) advancement.” Id.
Like the claimant’s interest in Court of Flags, Ms. Kuhn’s interest in having a “cushion” to safeguard her finances should difficulties arise is insufficient to justify an advance under section 440.20(12)(c)(2). In reaching this conclusion, we in no way cast doubt on the many advances that are tethered to justifiable medical and other needs arising from and related to workers’ compensation claims.[7] Our observation is that most advances made in recent years are appropriate. A claimant seeking an advance must demonstrate some plausible nexus to the reason the legislature provided for advances of compensation in the first place. Here, Ms. Kuhn sought an advance without establishing any connection to a pending workers’ compensation claim. Accordingly, it was error to award the advance.
REVERSED.
PADOVANO and RAY, JJ., concur.

. For example, she has appeared on the Tonight Show in a role with actor Charlie Sheen.

. Subsection (c)(1), which relates to advance payments of compensation up to $2000 that "may be approved informally by letter, without hearing, by any judge of compensation *1113 claims or the Chief Judge” is not at issue and is therefore omitted from our discussion.

. In doing so, we question whether Ms. Kuhn is a proper claimant where the only purpose of filing her new petition is to seek an advance of $2000 under section 440.20(12)(c)(2), unaccompanied by any other claim for present or future benefits. Indeed, this type of advance is typically sought by motion, rather than by petition. The reason is that an “advance”- — as its name suggests— is ordinarily sought prior to or in conjunction with related benefits the claimant seeks under a pending request to which the advance would attach or apply; a new petition is unnecessary. At the time of filing her new petition for an “advance", however, Ms. Kuhn had no pending claim for benefits before the JCC, nor does she have one currently (other than for the requested advance). As such, her claimant status is doubtful. Despite this concern (which the parties have not raised), we resolve this appeal on the statutory issue addressed in the parties’ briefs.

. Under subsection (d), a JCC may approve an advance upon due consideration of three factors: the "best interests" of the claimant; whether an advance (over $2000) will materially prejudice the E/C; and whether the requested advance is reasonable under the circumstances. § 440.20(12)(d), Fla. Stat.

. We note in passing that the statute's use of the phrase "entitled thereto” cannot be construed to create anything more than an entitlement to be considered for an advance if a claimant falls within one of the three statutory classifications. Subsection (c)(2)'s use of the word “may” makes clear that an award is discretionary and not an entitlement to those eligible for advances.

. See, e.g., Jones Contracting Co. v. Jones, 496 So.2d 926 (Fla. 1st DCA 1986) (generating more disposable income via purchase of annuity insufficient basis for advance).

. As one example under the lump sum advance statute, this Court in Edgewood Boys' Ranch Foundation v. Robinson, 456 So.2d 1270, 1271 (Fla. 1st DCA 1984), held it was in a claimant's best interests to award an advance to perform renovations to his home to accommodate his disabilities.